## JOHN ASHWORTH, JR. *vs.* JOSEPH KITTRIDGE.

The decision of the presiding judge, admitting testimony for the plaintiff in reply, is within his discretion and not subject to exception.

Medical books, even of received authority, are not competent evidence, if objected to by the adverse party.

THIS action was tried in this court, April term, 1853, before *Merrick*, J., who reported the same for the whole court, and if his rulings were correct, judgment was to be entered on the verdict for the plaintiff; otherwise the verdict was to be set aside, and a new trial granted. The case sufficiently appears in the opinion.

*J. G. Abbott,* for the defendant, cited 1 Greenl. Ev. § 440, note ; *Collier* v. *Simpson,* 5 C. & P. 73 ; *Cocks* v. *Purday,* 2 C. & K. 270.

*B. F. Butler,* for the plaintiff, cited *Stone* v. *Varney,* 7 Met. 86 ; *Cushing* v. *Billings,* 2 Cush. 158.

SHAW, C. J.  In an action against a surgeon, for neglect, and want of competent skill, in the treatment of the plaintiff, by means of which the plaintiff lost his arm, the plaintiff put in his evidence, to show what was his own condition, and the treatment by the defendant, and both parties offered evidence of the opinions of physicians and surgeons as experts.  In reply the plaintiff recalled some of his witnesses, and offered other evidence, which was objected to as not admissible at that stage.  It is not always easy to determine in such cases, whether the evidence is strictly original or rebutting ; but we consider that it is for the judge in his discretion to determine whether such evidence shall be received or not.  *Cushing* v. *Billings,* 2 Cush. 158.  It may be proper to remark, that the rule of practice requiring the plaintiff to put in the whole of the evidence, on which he intends to rely, is peculiarly important to be adhered to, in a case like the present, wherein professional witnesses are called to give opinions upon the case thus made.

But upon the other point, the court are of opinion, that it was not competent for the counsel for the plaintiff, against the objection of the other side, to read medical books to the jury.  It was formerly practised rather by general indulgence and tacit consent of parties, than in pursuance of any rule of law ; but it has been frequently decided that it is not admissible, and we now consider the law to this effect well settled, both upon principle and authority.  Where books are thus offered, they are in effect used as evidence, and the substantial objection is, that they are statements wanting the sanction of an oath ; and the statement thus proposed, is made by one not present, and not liable to cross-examination.  If the same author were cross-examined, and called to state the grounds of his opinion, he might himself alter or modify it; and it would be tested by a comparison with the opinions of

others. Medical authors, like writers in other departments of science, have their various and conflicting theories, and often sustain and defend them with ingenuity. But as the whole range of medical literature is not open to persons of common experience, a passage may be found in one book favorable to a particular opinion, when perhaps the same opinion may have been vigorously contested, and perhaps triumphantly overthrown, by other medical authors, but authors whose works would not be likely to be known to counsel or client, or to court or jury.

Besides; medical science has its own nomenclature, its technical terms and words of art, and also common words used in a peculiar manner, distinct from their received meaning, in the general use of the language. From these and other causes, a person not versed in medical literature, though having a good knowledge of the general use of the English language, would be in danger, without an interpreter, of misapprehending the true meaning of the author. Whereas, a medical witness would not only give the fact of his opinion, and the grounds on which it is formed, with the sanction of his oath, but would also state and explain it in language intelligible to men of common experience. If it be said, that no books should be read, except works of good and established authority, the difficulty at once arises as to the question, what constitutes "good authority;" more especially whether it is a question of competency to be decided by the court, whether any particular book shall be received or rejected; or a question of weight of testimony, so that any book may be read, leaving its weight, force and effect to the jury. Either of the alternatives would be attended with obvious, if not insuperable objections. *Exceptions sustained.*